**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ROY BACK,

      Plaintiff,

vs.                                      No. CIV 12-0261 JB/WDS

CONOCOPHILLPS COMPANY,

      Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Defendant's Motion for Judgment on the Pleadings, filed May 9, 2012 (Doc. 6)("Motion"). The Court held a hearing on July 27, 2012. The primary issues are: (i) whether Plaintiff Roy Back has stated a claim for wrongful termination; (ii) whether Back has stated a claim for breach of an implied contract; (iii) whether Back has stated a claim for breach of the implied covenant of good faith and fair dealing; (iv) whether Back has stated a claim for a prima facie tort; and (v) whether the Court should permit Back to amend his Complaint for Wrongful Termination and/or Retaliatory Discharge, Breach of Implied Contract, Breach of Covenant of Good Faith and Fair Dealing, Prima Facie Tort, and Damages, filed March 13, 2012 (Doc. 1)("Complaint"). The Court will grant the Motion. The Court finds that Back fails to state a claim for wrongful termination, because Defendant ConocoPhillips Company did not terminate him in violation of a New Mexico public policy or in retaliation for furthering a public policy. The Court finds that Back has not stated a claim for breach of an implied contract, because he cannot identify any statements or conduct that create a reasonable expectation of continued employment. Because the breach of the implied covenant of good faith and fair dealing relies on there being an implied contract, the Court concludes that Back has failed to state a claim on this

basis as well.  Because Back fails to allege an intent to injure, he has not stated a claim for a prima facie tort.  Finally, the Court will permit Back to amend his Complaint only with respect to Counts II and III.

## FACTUAL BACKGROUND

The following is a summary of the facts in the Complaint.  ConocoPhillips does not admit all of these allegations, but, for the purposes of this motion only, they are assumed to be true. ConocoPhillips admits and denies the Complaint's allegations as set forth in its Answer to Plaintiff's Complaint, filed April 25, 2012 (Doc. 3).

Back worked for ConocoPhillips from May, 1989, to January, 2010, at its Albuquerque, New Mexico terminal, and he became a full-time Terminal Operator in 1989.  See Complaint ¶¶ 8-9, at 2.  From 1999 to 2010, he held a variety of positions at the Albuquerque terminal, including: (i) Facility Manager; (ii) Lead Operator; and (iii) Terminal Operator.  See Complaint ¶ 10, at 2.  As a Terminal Operator, he worked with fellow Terminal Operator Ed Corley and under the supervision of Terminal Supervisor Lonnie Teal.  See Complaint ¶ 12, at 2.  Corley performed the weekly gain/loss report from December 10, 2009, to December 18, 2009, and Corley "never disclosed to Plaintiff that there had been a ninety-five (95) barrel loss to the Aviation Gasoline System." Complaint ¶ 17, at 3.  On or about December 17, 2009, "it was discovered that Tank 102, which held aviation gas, had released gas from a crack in the coupling that was on the thermal relief piping from the suction line back to the tank."  Complaint ¶ 15, at 2.  Upon discovering the leak from a small thermal relief line, Back closed both valves to stop the leak, notified Teal, and opened the valve on the suction line from Tank 102 to relieve the pressure from the valve.  See Complaint ¶ 18, at 3. Teal contacted an oil spill removal organization to clean up the leak.  See Complaint ¶ 19, at 2.  On or about December 28, 2009, while conducting closeouts, Back noted that an "eight-hundred-and-

eighty (880) barrel loss from Tank 102 had been recorded at 12:00 p.m." Complaint ¶ 20, at 3. "By the time Plaintiff discovered the loss, it had grown to a fifteen hundred (1500) barrel loss," and he immediately informed Teal. Complaint ¶ 21, at 3. Back then noticed that a line had ruptured on Tank 105. See Complaint ¶ 22, at 3. Back and Corley contacted a trucking company to pump the pooled product and the oil spill removal organization to clean up the leaked product. See Complaint ¶ 23, at 3.

On January 1, 2010, an investigative team consisting of Kenneth Sheppard, Thomas Lackey, and Doug Johnson "began a brief investigation with a list of prepared questions focused on Plaintiff and Mr. Corley's alleged 'neglectful behavior.'" Complaint ¶ 24, at 3. "Subsequent to the two leaks and prior to terminating Plaintiff, Defendant conducted an investigation to determine the cause of the leaks." Complaint ¶ 26, at 3-4. ConocoPhillips informed Back and the New Mexico Department of Workforce Solutions that: (i) Back and Corley failed to follow terminal operational procedures; (ii) Back and Corley did not complete the terminal balance as required; (iii) Back and Corley were conducting the required daily balances during the week; (iv) Back and Corley failed to complete a month-to-date loss/gain as required under ConocoPhillips' procedures; and (v) the pipeline failure which led to the two leaks in Tank 102 "was due to water in the relief line which froze, expanded, and resulted in the fitting failure." Complaint ¶ 27, at 4. ConocoPhillips's investigative team did not include "a safety to assess the tanks confined safety entry, the exposure to high benzene levels, and exposure to leaded product." Complaint ¶ 28, at 4. ConocoPhillips made "pre-determined assumptions in asserting that Plaintiff and his co-workers were the sole cause of the releases from Tank 102," and "failed to address . . . other potential causes that may have caused the release." Complaint ¶¶ 29-30, at 4. The coupling for Tank 102 was case metal, which was inappropriate, and, before the Tank 102 releases, an internal audit revealed that the cast metal fittings were inadequate.

See Complaint ¶¶ 31-32, at 4-5.  On January 25, 2010, Division Manager Carrie Wild informed Back that ConocoPhillips was terminating him for cause based on his "neglectful behaviors," which led to and contributed to leaks between December 11, 2009 and December 28, 2009.  Complaint ¶ 34, at 5.  ConocoPhillips also terminated Corley and Teal on January 25, 2009.  See Complaint ¶ 35, at 5.

When Back began working at the Albuquerque Terminal, Tanks 102 and 105 were "inactive," and, when ConocoPhillips determined to eliminate aviation gas from the facility, Tanks 102 and 105 were supposed to be emptied and cleaned.  Complaint ¶¶ 37-39, at 5.  Had the pipelines been purged in accordance with ConocoPhillips' Management of Change plan and its "policy procedure," there would not have been a gas release in December 2009.  Complaint ¶¶ 41, 43, at 5-6.  The "second spill was caused by water left in the lines from a tank cleaning project that was done by engineers."  Complaint ¶ 44, at 6.  Before the tank cleaning project, Back sent an electronic mail transmission to lead engineer Joe Cramer inquiring what ConocoPhillips planned to do about water or product left in the pipes to prevent a future leak, and Cramer responded that someone else would have to handle the line.  See Complaint ¶ 45, at 6.  "Had the pipelines been properly purged in July of 2009 when the tank cleaning project took place, both releases would have been prevented."  Complaint ¶ 46, at 6.  Back was never trained on the "month-to-date loss/gain policy," but ConocoPhillips terminated him, in part, because of his failure to follow the new month loss/gain procedure.  Complaint ¶¶ 49-55, at 7.  ConocoPhillips terminated Back, in part, "for allegedly filing a false report regarding actual fuel loss from the Tank release."  Complaint ¶ 57, at 7.  Teal, rather than Back, filed the allegedly false report regarding fuel loss.  See Complaint ¶¶ 58-59, at 7-8.  ConocoPhillips also terminated Back because he did not conduct daily operator rounds, but Teal and a District Director instructed him not to conduct operator rounds on the weekend.  See Complaint

¶¶ 61-62, at 8.

## PROCEDURAL BACKGROUND

On March 13, 2012, Back filed his Complaint.  See Doc. 1.  In his Complaint, he asserts four causes of action: (i) Count I -- wrongful discharge based on terminating Back for failing to follow a company policy on which he had not been trained; (ii) Count II -- breach of an implied contract based on a promise and representation that created a reasonable expectation that ConocoPhillips would follow particular, defined, and established personnel procedures regarding Back's training and treatment; (iii) Count III -- breach of the covenant of good faith and fair dealing based on ConocoPhillips terminating Back for failing to follow a company policy on which he had not been trained; and (iv) Count IV -- prima facie tort based on ConocoPhillips discharging Back with malicious intent.  See Complaint at 8-11.  On April 25, 2012, ConocoPhillips filed its Answer to Plaintiff's Complaint.  See Doc. 3 ("Answer").  In its Answer, ConocoPhillips asserts the following defenses: (i) that the Complaint fails to state a ground upon which relief can be granted; (ii) that Back's failure to mitigate his damages bars or limits his claims; (iii) that Back was an at-will employee and that his termination was "neither a violation of public policy, in violation of any implied covenant, in violation of any covenant of good faith and fair dealing, or that it was done with malicious intent"; and (iv) that Back has failed to allege facts sufficient to state claim for compensatory or punitive damages.  Answer at 9-10.

On May 9, 2012, ConocoPhillips filed its Motion.  See Doc. 6.  ConocoPhillips moves, pursuant to rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings, based on the Complaint failing to state a claim for relief on its face.  See Motion at 1.  It asserts that New Mexico law provides that, absent an express contract to the contrary, generally, either an employee or employer can terminate employment at will.  See Motion at 3 (citing Gormley v. Coca-Cola

-5-

Enter., 135 N.M. 128, 85 P.3d 252 (Ct. App. 2004)).  It recognizes that there are two exceptions to

this rule: (i) where an implied contract exists that limits the employer's authority to terminate the

employment relationship, see Motion at 4 (citing Lopez v. Kline, 124 N.M. 539, 953 P.2d 304

(1998)); and (ii) when an employer has wrongfully discharged an employee in violation of public

policy, see Motion at 4 (citing Hartbarger v. Frank Paxton Co., 115 N.M. 665, 669, 857 P.2d 776,

780 (1993)).  It asserts that Back attempts to assert claims under each exception.  ConocoPhillips

argues that Count I attempts to assert wrongful termination in violation of public policy.  See Motion

at 4.  It contends that an at-will employee may recover in tort when the termination of his

employment contradicts a clear mandate of public policy.  See Motion at 4 (citing Chavez v.

Manville Prods. Corp., 108 N.M. 643, 647, 777 P.2d 371, 375 (1989)).  It argues that relevant public

policy concerns may originate in statutory provisions or in court decisions.  See Motion at 4 (citing

Vigil v. Azola, 102 N.M. 682, 688-89, 699 P.2d 613, 619-20 (Ct. App. 1983)).  It asserts that a

retaliatory discharge claim requires that a plaintiff prove causation.  See Motion at 5.

ConocoPhillips argues that Back asserts an implicit public policy that an employee cannot be

discharged for the failure of a co-worker to correctly carry out his job functions.  See Motion at 5.

It contends that New Mexico has not recognized such a policy interest and that there is no assertion

that Back acted in furtherance of any recognized public policy.  See Motion at 5.

        With respect to Count II, ConocoPhillips argues that the ultimate question is whether it

created a "reasonable expectation" of job security.  Motion at 6 (citing Hartbarger v. Frank Paxton

Co., 115 N.M. at 672, 857 P.2d at 783).  It asserts that the facts in the Complaint support a finding

that Back was an employee at will, because there is no allegation that ConocoPhillips did or said

anything that would create a reasonable expectation of job security or limited its ability to terminate

the employment relationship.  See Motion at 6.  It contends that the "only expectation asserted in

the Complaint is Plaintiff's vague expectation that he and other employees would be treated in an unspecified manner."  Motion at 6.  ConocoPhillips argues that Back "does not, and cannot, assert that he relied on any provision in Defendant's employee manual which created any reasonable expectation of continued employment, as he asserts that Defendant failed to provide him with a copy of the manual."  Motion at 6-7.  It further asserts that, because Back's employment was at will, he cannot recover on Count III, which alleges a breach of the covenant of good faith and fair dealing.  See Motion at 7 (citing Melnick v. State Farm Mut. Auto. Ins. Co., 106 N.M. 726, 730, 749 P.2d 1105, 1109 (1988)).

Turning to Count IV, ConocoPhillips argues that the facts alleged do not support a prima-facie-tort claim.  See Motion at 7.  It asserts that the elements of this claim are: (i) an intentional and lawful act; (ii) an intent to injure the plaintiff; (iii) injury to the plaintiff as a result of the intentional act; and (iv) the absence of justification for the injurious act.  See Motion at 7 (citing Schmitz v. Smentowski, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990)).  It contends that the Complaint does not set forth any facts which demonstrate that ConocoPhillips intended to injure Back.  See Motion at 7-8.  It argues that, at best, the Complaint establishes that ConocoPhillips mistakenly terminated Back for another employee's negligence.  See Motion at 8.

On June 13, 2012, Back filed his Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings (Doc. 6).  See Doc. 18 ("Response").  Back argues that he is entitled to present evidence in support of his claim.  See Response at 3.  He asserts that he has more than satisfied the standard required at the dismissal stage under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  He contends that the Complaint raises a reasonable expectation that discovery will reveal ConocoPhillips' misconduct in wrongfully terminating Back.  See Response at 6.  He notes that ConocoPhillips, despite multiple requests, has refused to produce its policy and procedure manuals.

See Response at 6.  He argues that, in the Complaint, he asserted that certain policies and procedures governed his employment relationship, and that, as a result of ConocoPhillips' refusal to turn over those documents, he is unable to cite a specific policy that ConocoPhillips failed to follow.  See Response at 7.  Back contends that the only reason for ConocoPhillips to refuse his request is because it fears that producing such documents will reveal its wrongdoing.  See Motion at 8.

Back argues that, "[i]n the instant case, . . . there is no legislative enactment at all that directly addresses the employee's conduct, but the judiciary determines that, based on other relevant statutes or an implicit public policy, both a right and a remedy should be recognized."  Response at 11 (citing Shovelin v. Cent. N.M. Elec. Co-op., Inc., 115 N.M. 293, 303-04, 850 P.2d 996, 1006-07 (1993)).  He contends that "Plaintiff has clearly asserted that he believes he was wrongfully terminated in violation of a public policy that should be recognized by the Court."  Response at 11.  He asserts that "[p]ublic policy does not favor large corporations terminating innocent employees for mistakes caused by the employer."  Response at 12.  With respect to Count II, Back argues that he relies on "promises, oral representations, an employee handbook, and the conduct of the Defendant for his assertion that an implied contract existed and was breached."  Response at 14.  He contends that his employment was "controlled by a policy and procedural manual."  Response at 14.  He asserts that ConocoPhillips cannot escape liability through its refusal to produce the policy and procedure manual.  See Response at 15.  Turning to Count III, Back argues that this count emanates from the implied contract, and that ConocoPhillips acted "in bad faith in failing to follow its established policies and procedures, previous conduct, and promises or representations."  Response at 16.  Back recognizes his heavy burden, under New Mexico law regarding a prima-facie tort,  to prove intent, but argues that discovery will reveal that ConocoPhillips intended to injure him.  See Response at 16.  He contends that ConocoPhillips "did not have a justifiable reason to

terminate Plaintiff, but clearly did so with intent to injure Plaintiff."  Response at 17.

On July 2, 2012, ConocoPhillips filed its Reply in Support of Motion for Judgment on the Pleadings.  See Doc. 19 ("Reply").  ConocoPhillips argues that "Plaintiff fails to assert a single fact that would exclude his employment from the general rule in New Mexico that, absent an express contract to the contrary, employment is terminable at will."  Reply at 3.  It notes that the tort of retaliatory discharge does not lie where "an employee is protected by another cause of action, such as breach of an implied employment contract."  Reply at 4 (citing Gandy v. Wal-Mart Stores, Inc., 117 N.M. 441, 444, 872 P.2d 859, 862 (1994)).  It asserts that Back recognizes that his retaliatory discharge claim is not based on any recognized public policy.  See Reply at 4 (citing Response at 11).  It notes that Back cites no authority for his requested expansion of New Mexico public policy. See Reply at 4.  With respect to Count II, ConocoPhillips argues that the Complaint contains only the conclusory allegations that there was an implied contract, that it would follow certain procedures, and that a policy and procedure manual governed the employment relationship.  See Reply at 5.  ConocoPhillips asserts that it has no employee handbook to provide Back.  See Reply at 5.  It further asserts that a policy "does not automatically create an implied contract."  Reply at 5.  It contends that Back attempts to rely on a policy "that he has never seen and cannot describe." Reply at 6.  ConocoPhillips argues that, because Count II fails, Count III, which is based on the implied contract, also fails.  See Reply at 6.  With respect to Count IV, ConocoPhillips asserts that the Complaint does not allege that it had an improper motive or malice.  See Reply at 8. ConocoPhillips further contends that any amendment to the Complaint would be futile, because Back has not explained how he intends to cure the deficiencies in the Complaint and does not bring forth any additional facts to bolster his claims.  See Reply at 8 (citing Henderson v. Shinseki, 606 F.3d 1256, 1268 (10th Cir. 2010)).

The Court held a hearing on July 27, 2012.  ConocoPhillips argued that, to survive this Motion, Back must nudge his claims over the line from conceivable to plausible.  See Transcript of Hearing at 2:21-23 (July 27, 2012)(Lamont)("Tr.").[1]  It asserted that, when one strips the Complaint of its legal conclusions, the facts cannot support any claim under New Mexico law.  See Tr. at 3:23-4:3 (Lamont).  Regarding Count I, ConocoPhillips argued that Back has not established that he falls outside the general rule that employment in New Mexico is at-will.  See Tr. at 3:19-23 (Lamont).  ConocoPhillips asserted that New Mexico recognizes an exception where an employee is terminated for acting in furtherance of an established public policy.  See Tr. at 3:23-4:1 (Lamont).  It further asserted that there are only a handful of judicially created public policies, including those related to voting and free speech, that meet this exception.   See Tr. at 4:2-5:5 (Court, Lamont).  ConocoPhillips argued that Back alleges a public policy that an employee cannot be terminated for the negligence of another and that there is nothing to support this contention.  See Tr. at 5:6-20 (Lamont).  Back asserted that New Mexico courts have recognized that there may be some instances in which the judiciary would have to imply a right and remedy for a violation of public policy.  See Tr. at 7:23-8:3 (Danoff).  He asked for leave to amend to assert a public policy based on the leak adversely affecting the environment.  See Tr. at 8:5-8 (Danoff).  Back argued that his case is not the typical at-will employment case, because ConocoPhillips gave reasons for his termination and they were wrong.  See Tr. at 8:12-24 (Danoff).  The Court asked whether the reason an employer gives must be correct, if it has no obligation to provide a reason.  See Tr. at 8:25-9:6 (Court).  Back responded that, in this case, ConocoPhillips gave a reason, and it was unjustifiable.  See Tr. at 9:14-17 (Danoff).  The Court asked Back to elaborate on an environmental policy that would support

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Count I.  See Tr. at 11:1-6 (Court).  Back asserted that he had found an electronic mail transmission that indicated that the leaks at issue posed an environmental threat.  See Tr. at 11:7-12 (Danoff). He argued that he can show that he was not involved in the negligence at issue and that, in fact, he put ConocoPhillips on notice of the risk of a leak.  See Tr. at 11:17-12:1 (Danoff).  He admitted, however, that he was not alleging that he was fired because he put ConocoPhillips on notice of these problems, and that an amended complaint would not contain an allegation that he was fired because he brought environmental concerns to ConocoPhillips' attention.  See Tr. at 12:2-8 (Court, Danoff). Back asserted that he would allege that he was not trained on ConocoPhillips' policy and that he did not contribute to any negligence.  See Tr. at 12:9-13:1 (Danoff).  He argued that, if an employer has a policy, the employer has a duty to implement and train employees on it before using that policy as a basis to fire someone.  See Tr. at 14:15-21 (Danoff).  He contended that, once an employer gives a reason for a termination, it has terminated that employee for cause and must support that good cause.  See Tr. at 15:10-16:2 (Danoff).  The Court clarified that Back was fired, in part, because he created an environmental problem -- not because he tried to prevent one -- and ConocoPhillips agreed that the Court was correct.  See Tr. at 17:12-18:2 (Court, Lamont).

With respect to Count II, ConocoPhillips argued that the Complaint is silent regarding any words that would have created any reasonable expectation of continued employment.  See Tr. at 19:2-13 (Lamont).  It notes that Back never says what the employment policy provides or alleges in what way the policy limited ConocoPhillips' authority to terminate him.  See Tr. at 19:13-23 (Lamont).  Additionally, it asserted that, for an employee to have an implied contract under a policy, the employee must know what a policy says and emphasized that Back asserts that he has not seen a policy.  See Tr. at 20:4-16 (Lamont).  It argued that the only policy it has is a one-page policy which sets out certain disciplinary steps, but reserves the right to terminate an employee without

going through those steps.  See Tr. at 21:6-11 (Court, Lamont).  ConocoPhillips further noted that

there are no allegations of any oral statements that would create an implied contract.  See Tr. at 23:9-

14 (Lamont).  The Court asked Back on what statements he relied to establish an implied contract.

See Tr. at 24:15-16 (Court).  Back responded that he will have statements to add, but that he needs

to see the policy to do that.  See Tr. at 24:17-18 (Danoff).  The Court asked how Back can say he

relied on a policy, if he does not know what the policy said.  See Tr. at 24:19-25 (Court).  Back

responded that he saw the policies, but did not memorize them.  See Tr. at 25:6-9 (Danoff).  He

asserted that he should have the benefit of being able to see the policy, before the Court dismisses

the claim.  See Tr. at 26:4-14 (Danoff).  He emphasized that he needed to see the policy to amend

his Complaint.  See Tr. at 28:5-8 (Danoff).  ConocoPhillips argued that Back did not have any

reasonable expectation of continued employment, and that he has not pointed to any policy or

provision that ConocoPhillips had that would create an implied contract.  See Tr. at 30:13-31:8

(Lamont).  It further asserted that this case resembles Khalik v. United Air Lines, 671 F.3d 1188,

1191 (10th Cir. 2012), where the United States Court of Appeals for the Tenth Circuit held that

several of the plaintiff's allegations were not entitled to an assumption of truth, because they were

entirely conclusory.  See Tr. at 31:9-24 (Lamont).  The Court asked Back whether he could allege

that other employees were given progressive discipline.  See Tr. at 33:25-34:5 (Court).  Back

responded that he can make some allegations regarding the treatment of other employees.  See Tr.

at 34:5-8 (Danoff).

        ConocoPhillips then turned to Count IV and emphasized that the elements of such a claim

are: (i) an intentional and unlawful act; (ii) an intent to injure the plaintiff; (iii) injury to the plaintiff

as a result of the intentional act; and (iv) absence of justification for the injurious act.  See Tr. at

35:21-25 (Lamont).  It asserted that the Complaint does not allege an intent to injure and that an

unlawful act does not equal an intent to injure.  See Tr. at 36:8-12 (Lamont).  It argued that the allegations in the Complaint are that ConocoPhillips did not conduct a thorough investigation and that it did not train Back, facts which do not rise to the level of intent to injure or maliciousness.  See Tr. at 36:15-19 (Lamont).  Before Back spoke with respect to Count IV, the Court asked whether Back had any argument on Count III.  See Tr. at 37:13-14 (Court).  Back responded that "the formulation of [the] implied contract or covenant of good faith and fair dealing [claims] would require us to see that policy or employee handbook."  Tr. at 37:21-38:7 (Danoff).  Back then argued that ConocoPhillips' failure to conduct a thorough investigation and its termination of him for a procedure for which he was not trained, falls within the purview of a prima-facie tort.  See Tr. at 38:8-17 (Danoff).  He asserted that the Complaint's allegations that he was damaged and that the damages would be known establish the intent to injure.  See Tr. at 38:25-39:10 (Danoff).  The Court suggested that such an interpretation would mean that the second element has no meaning independent of the first element.  See Tr. at 39:11-14 (Court).  Back emphasized that the intent is reflected in his termination after twenty years as a faithful employee.  See Tr. at 39:15-18 (Danoff).  ConocoPhillips pointed the Court to Lexington Insurance Co. v. Rummel, 123 N.M. 774, 945 P.2d 992 (1997), with respect to the intent-to-injure prong.  See Tr. at 41:20-42:12 (Lamont).

## LAW REGARDING DISMISSAL UNDER RULE 12(c)

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties.  See Kruzitis v. Okuma Mach. Tool, Inc., 40 F.3d 52, 54 (3d Cir. 1994)("Under Rule 12(c), we will not grant judgment on the pleadings unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.")(internal quotation

marks omitted).  A "[j]udgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'"  Park Univ. Enterprises, Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d 1239, 1244 (10th Cir. 2006)(citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)).

"Any party may move for judgment on the pleadings if no material facts are in dispute and the dispute can be resolved on both the pleadings and any facts of which the Court can take judicial notice."  Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. 303, 304 (D.N.M. 2000)(citing Fed. R. Civ. P. 12(c)).  A motion pursuant to rule 12(c) is generally treated in the same manner as a motion to dismiss under rule 12(b)(6).  See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304 (citing Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998)).  A motion for a judgment on the pleadings will be granted if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law.  See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304.

A court considering a motion for judgment on the pleadings should "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same."  Park Univ. Enters. Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d at 1244.  The court must view the facts presented in the pleadings and draw the inferences therefrom in the light most favorable to the nonmoving party.  See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304.  All of the nonmoving parties' allegations are deemed to be true, and all of the movants' contrary assertions are taken to be false.  See Nat'l Metro. Bank v. United States, 323 U.S. 454, 456-57 (1945); Ramirez v. Dep't of Corr., 222 F.3d 1238, 1240 (10th Cir. 2000); Freeman v. Dep't of Corr., 949 F.2d 360, 361 (10th Cir. 1991).

The same standards that govern a motion to dismiss under rule 12(b)(6) also govern a motion

-14-

for judgment on the pleadings under rule 12(c).  See Atl. Richfield Co. v. Farm Credit Bank, 226 F.3d 1138, 1160 (10th Cir. 2000).  Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).  "[T]he Supreme Court [of the United States] recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 558, 562).  "The [Supreme] Court [of the United States] explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at

-15-

570)(alterations omitted).  "Thus, the mere metaphysical possibility that some plaintiff could prove

some set of facts in support of the pleaded claims is insufficient; the complaint must give the court

reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these

claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.  The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct, much
> of it innocent, then the plaintiffs "have not nudged their claims across the line from
> conceivable to plausible."  The allegations must be enough that, if assumed to be
> true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly,

127 S Ct. at 1974)(internal citations omitted).

> This requirement of plausibility serves not only to weed out claims that do not (in the
> absence of additional allegations) have a reasonable prospect of success, but also to
> inform the defendants of the actual grounds of the claim against them.  "Without
> some factual allegation in the complaint, it is hard to see how a claimant could
> satisfy the requirement of providing not only 'fair notice' of the nature of the claim,
> but also 'grounds' on which the claim rests."  [Bell Atl. Corp. v. Twombly, 127
> S.Ct.] at 1965 n. 3.  See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.,
> 499 F.3d 663, 667 (7th Cir. 2007)("[A]t some point the factual detail in a complaint
> may be so sketchy that the complaint does not provide the type of notice of the claim
> to which the defendant is entitled under Rule 8.").  The Twombly Court was
> particularly critical of complaints that "mentioned no specific time, place, or person
> involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a
> complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . .
> would have little idea where to begin."  Id.

Robbins v. Oklahoma, 519 F.3d at 1248.

In determining the sufficiency of a complaint, all well-pleaded factual allegations are to be

taken as true.  See Timpanogos Tribe v. Conway, 286 F.3d 1195, 1204 (l0th Cir. 2002).

"Nevertheless, conclusory allegations without supporting factual averments are insufficient to state

a claim upon which relief can be based."  Hall v. Belman, 935 F.2d 1106, 1110 (l0th Cir. 1991).

"Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true

only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." Hall v. Belman, 935 F.2d at 1110.  Only well-pleaded facts, as distinguished from conclusory allegations, are admitted when considering a motion to dismiss for failure to state a claim upon which relief can be granted.  See Smith v. Plati, 258 F.3d 1167, 1174 (10th Cir. 2001).

A court must convert a motion to dismiss into a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court," and "all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d).  Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment.  See Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279, n.1 (10th Cir. 2004)(citing 27A Fed. Proc., L.Ed. § 62:520 (2003)).  Furthermore, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).  A court may consider documents to which the complaint refers if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.  See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941-42 (10th Cir. 2002).  If, however, a document is not incorporated by reference or attached to the complaint, but in the complaint refers to the document and is central to the plaintiff's claim, the defendant may submit an "indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).  See 5A C. Wright & A. Miller, Federal Practice & Procedure § 1327 (3d ed. 2004)("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading.").

**RELEVANT LAW REGARDING AMENDMENT OF PLEADINGS**

Rule 15(a)(2) provides: "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Under rule 15(a), the court should freely grant leave to amend a pleading where justice so requires.  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. 571, 579-80 (D.N.M. 2010)(Browning, J.); Youell v. Russell, No. 04-1396, 2007 WL 709041, at *1-2 (D.N.M. Feb. 14, 2007)(Browning, J.); Burleson v. ENMR-Plateau Tele. Coop., No. 05-0073, 2005 WL 3664299, at *1-2 (D.N.M. Sept. 23, 2005)(Browning, J.).  The Supreme Court has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . [,] repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given.  Fomen v. Davis, 371 U.S. 178, 182 (1962). Furthermore, the Tenth Circuit has held that district courts should grant a plaintiff leave to amend when doing so would yield a meritorious claim.  See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001).  See also In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.

A court should deny leave to amend under rule 15(a), however, where the proposed "amendment would be futile." Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv., 175 F.3d 848, 859 (10th Cir. 1999).  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.  An amendment is "futile" if the pleading "as amended, would be subject to dismissal." In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (citing TV Commc'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992)).  A court may also deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed." In re Thornburg

-18-

Mortg., Inc. Sec. Litig., 265 F.R.D. at 579 (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1365-66

(10th Cir. 1993)).  The Tenth Circuit has also noted:

> It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, see Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452, 1462 (10th Cir. 1991); Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990); First City Bank v. Air Capitol Aircraft Sales, 820 F.2d 1127, 1133 (10th Cir. 1987), especially when the party filing the motion has no adequate explanation for the delay, Woolsey, 934 F.2d at 1462.  Furthermore, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."  Las Vegas Ice, 893 F.2d at 1185.

Frank v. U.S. W., Inc., 3 F.3d at 1365-66.  "The . . . Tenth Circuit has emphasized that '[t]he

purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided

on its merits rather than on procedural niceties.'"  B.T. ex rel. G.T. v. Santa Fe Pub. Schs., No.

05-1165, 2007 WL 1306814, at *2 (D.N.M. Mar. 12, 2007)(Browning, J.)(quoting Minter v. Prime

Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006)).

### RELEVANT NEW MEXICO LAW REGARDING AT-WILL EMPLOYMENT

In New Mexico, "an employment contract is for an indefinite period and is terminable at the

will of either party unless the contract is supported by consideration beyond the performance of

duties and payment of wages or there is an express contractual provision stating otherwise."

Hartbarger v. Frank Paxton Co., 115 N.M. 665, 668, 857 P.2d 776, 779 (1993)(citation omitted).

At-will employment relationships "can be terminated by either party at any time for any reason or

no reason, without liability."  Hartbarger v. Frank Paxton Co., 115 N.M. at 668, 857 P.2d at 779.

"New Mexico courts have recognized two additional exceptions to the general rule of at-will

employment: wrongful discharge in violation of public policy (retaliatory discharge), and an implied

contract term that restricts the employer's power to discharge."  Hartbarger v. Frank Paxton Co., 115

N.M. at 668, 857 P.2d at 779.

New Mexico courts have held that a discharged at-will employee may "recover in tort when his discharge contravenes a clear mandate of public policy." Chavez v. Manville Prods. Corp., 108 N.M. at 647, 777 P.2d at 375.  "For an employee to recover under this new cause of action, he must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn." Vigil v. Arzola, 102 N.M. at 689, 699 P.2d at 620.  To establish a claim for retaliatory discharge, an employee must demonstrate that:

> (1) the employee was discharged because she or he performed an act that public policy has authorized or encouraged, or refused to perform an act that public policy would prohibit; (2) the employer either knew or suspected that the employee's act involved a protected activity; (3) there was a causal connection between the employee's protected actions and the employer's act of discharging her or him; and (4) the employee suffered damages.

McPeek v. Hubbard Museum, No. 27,424, 2010 WL 4060312, at *2 (Ct. App. Mar. 16, 2010)(unpublished)(citing Weidler v. Big J. Enters. Inc., 124 N.M. 591, 953 P.2d 1089 (1997)).  The Supreme Court of New Mexico has held:

> The linchpin of a cause of action for retaliatory discharge is whether by discharging the complaining employee the employer violated a "clear mandate of public policy." A clear mandate of public policy sufficient to support a claim of retaliatory discharge may be gleaned from the enactments of the legislature and the decisions of the courts and may fall into one of several categories.  First, legislation may define public policy and provide a remedy for a violation of that policy.  Second, legislation may provide protection of an employee without specifying a remedy, in which case an employee would seek an implied remedy.  Third, legislation may define a public policy without specifying either a right or a remedy, in which case the employee would seek judicial recognition of both.  Finally, "[t]here may, in some instance, be no expression of public policy, and here again the judiciary would have to imply a right as well as a remedy."

Shovelin v. Central N.M. Elec. Co-op., Inc., 115 N.M. at 303, 850 P.2d at 1006 (citations omitted).

A promise, or offer, that supports an implied contract might be found in written

representations such as an employee handbook, in oral representations, in the parties' conduct, or in a combination of representations and conduct.  See Newberry v. Allied Stores, Inc., 108 N.M. 424, 426, 773 P.2d 1231, 1233 (1989)(citation omitted).  "Under New Mexico law, a personnel manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlined." See Newberry v. Allied Stores, Inc., 108 N.M. at 427, 773 P.2d at 1234.  The question whether an employment relationship has been modified is a question of fact.  See Lukoski v. Sandia Indian Mgmt. Co., 106 N.M. 664, 666, 748 P.2d 507, 509 (1988).  "An implied contract is created only where an employer creates a reasonable expectation.  The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon." Hartbarger v. Frank Paxton Co., 115 N.M. at 672, 857 P.2d at 783.  If the alleged employer's promise is not sufficiently explicit, the courts will not find an implied contract.  See Hartbarger v. Frank Paxton Co., 115 N.M. at 669, 857 P.2d at 780.

> Evidence relevant to this factual decision includes the language used in the personnel manual as well as the employer's course of conduct and oral representations regarding it.  We do not mean to imply that all personnel manual[s] will become part of employment contracts.  Employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason.  Such actions instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual.  However, if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it.  Having announced a policy, the employer may not treat it as illusory.

Lukoski v. Sandia Indian Mgmt. Co., 106 N.M. at 666-67, 748 P.2d at 509-10 (citation omitted).

"Whether an employer's words and conduct support a reasonable expectation on the part of employees that they will be dismissed only in accordance with specified procedures or for specified

reasons generally is a question of fact for the jury." Meland v. E. N.M. Med. Ctr., 131 N.M. 65, 69, 33 P.3d 285, 289 (2001). "[B]ecause an employee's expectation based on an employer's words or conduct must meet a certain threshold of objectivity, an employer may be entitled to judgment as a matter of law if the employee's expectations are not objectively reasonable." West v. Wash. Tru Solutions, LLC, 147 N.M. 424, 426, 224 P.3d 651, 653 (Ct. App. 2009). In deciding whether to grant summary judgment, the question is whether a reasonable jury could find that the words and conduct support an objectively reasonable expectation that the employees would be dismissed only in accordance with specified procedures and for specified reasons. See Meland v. E. N.M. Med. Ctr., 131 N.M. at 69, 33 P.3d at 289.

The Court has addressed implied contracts in several contexts. In Salazar v. City of Albuquerque, 776 F.Supp.2d 1217 (D.N.M. 2011)(Browning, J.), the Court noted that a city charter did not create an implied contract with a city employee. See 776 F.Supp.2d at 1251 ("Because the Mayor is already bound to obey whatever strictures the City Charter imposes upon him or her, it cannot also be a part of Salazar's employment contract."). In Armijo v. New Mexico Department of Transportation, No. 08-0336, 2009 WL 1329192 (D.N.M. April 6, 2009)(Browning, J.), the Court found that allegations that "the Department would follow state employment policies and procedure, and that the Department terminated him in breach of those policies without just cause," were insufficient to state a breach of an implied contract claim. Armijo v. N.M. Dep't of Transp., 2009 WL 1329192, at *7. The Court noted that the plaintiff did not "indicate what contractual provisions or employment policies the Department breached" and did not say "to what his employment contract entitles him or of what the Department deprived him." Armijo v. N.M. Dep't of Transp., 2009 WL 1329192, at *7. In Aguilar v. Las Cumbres Learning, Inc., No. 06-1100, 2008 WL 4107137 (D.N.M. April 26, 2008)(Browning, J.), the Court found that an implied contract did not exist where

the employment handbook on which the plaintiff relied specified that it was not a contract and that the defendant employed the plaintiff at will.  See 2008 WL 4107137, at *35.

## RELEVANT NEW MEXICO LAW REGARDING THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement."  Watson Truck & Supply Co., Inc. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990)(citations omitted).  "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." Watson Truck & Supply Co. v. Males, 111 N.M. at 60, 801 P.2d at 642 (internal quotation marks omitted).  The Supreme Court of New Mexico has expressed reluctance, however, to use the covenant of good faith and fair dealing "under circumstances where . . . it may be argued that from the covenant there is to be implied in fact a term or condition necessary to effect the purpose of a contract."  Watson Truck & Supply Co. v. Males, 111 N.M. at 60, 801 P.2d at 642.

New Mexico has recognized a cause of action for breach of the covenant of good faith and fair dealing sounds in contract.  See Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 439, 872 P.2d 852, 857 (1994). The Supreme Court of New Mexico also explained that tort recovery for breach of the covenant of good faith and fair dealing would be permissible only where a special relationship existed, such as between an insurer and its insured.  See Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857.  The "relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position."  Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857 (citations omitted)(internal quotation marks omitted).  Similarly, the Court of Appeals of New Mexico held that "[t]he claim for breach of good faith and fair dealing sounds in contract, at least

when no 'special relationship' such as that between an insured and insurer exists." Heimann v. Kinder-Morgan CO2 Co., 140 N.M. 552, 558, 144 P.3d 111, 117 (Ct. App. 2006).

The Supreme Court of New Mexico has noted that it does "not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment relationship." Melnick v. State Farm Mut. Auto. Ins. Co., 106 N.M. 726, 730, 749 P.2d 1105, 1109 (1988). This limitation is because "there is no contract of employment upon which the law can impose the stated duty to exercise good faith and fair dealing." Sanchez v. The New Mexican, 106 N.M. 76, 78, 738 P.2d 1321, 1324 (1987)(emphasis in original).

## RELEVANT NEW MEXICO LAW REGARDING PRIMA-FACIE TORT

In Schmitz v. Smentowski, 109 N.M. 386, 785 P.2d 726 (1990), the Supreme Court of New Mexico recognized a cause of action for prima-facie tort. See Schmitz v. Smentowski, 109 N.M. at 396, 785 P.2d at 736. The underlying theory of the prima-facie tort is that a party who intends to cause injury to another should be liable for that injury, if the conduct is generally culpable and not justifiable under the circumstances. See Schmitz v. Smentowski, 109 N.M. at 394, 785 P.2d at 734.

The elements of a cause of action for prima-facie tort are: (i) commission of an intentional, lawful act; (ii) an intent to injure the plaintiff; (iii) injury to the plaintiff as a result of the intentional act; and (iv) the absence of sufficient justification for the injurious act. See Lexington Ins. Co. v. Rummel, 123 N.M. 774, 777, 945 P.2d 992, 995 (1997); UJI 13-1631 NMRA[2] (listing the elements as: (i) that the defendant intentionally did some act; (ii) that the defendant intended that the act

---

[2]The Supreme Court of New Mexico's adoption of uniform jury instructions proposed by standing committees of the Court establishes a presumption that the instructions are correct statements of law. See State v. Wilson, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994).

would cause harm to the plaintiff or that the defendant knew with certainty that the act would cause harm to the plaintiff; (iii) that the defendant's act was a cause of plaintiff's harm; and (iv) that the defendant's conduct was not justifiable under all circumstances).  In <u>Schmitz v. Smentowski</u>, the Supreme Court of New Mexico emphasized the importance of limiting the cause of action for prima-facie tort, because the prima-facie tort was not intended to provide a remedy for every intentionally caused harm.  <u>See</u> 109 N.M. at 394, 785 P.2d at 734.  <u>See</u> <u>also</u> <u>Lexington Ins. Co. v. Rummel</u>, 123 N.M. at 777, 945 P.2d at 995 ("In recognizing prima facie tort, this Court emphasized the importance of limiting the cause of action. . . .  Prima facie tort was not intended to provide a remedy for every intentionally caused harm.").  Because not every intentionally caused harm gives rise to an actionable tort, once a plaintiff establishes intent to injure, the trial court must balance the defendant's act or acts against the justification for the act or acts and the severity of the injury, weighing: (i) the injury, (ii) the culpable character of the conduct, and (iii) whether the conduct is unjustifiable under the circumstances.  <u>See</u> <u>Portales Nat'l Bank v. Ribble</u>, 134 N.M. 238, 240, 75 P.3d 838, 840 (Ct. App. 2003).  These three balancing factors were refined into four factors in <u>Beavers v. Johnson Controls World Services, Inc.</u>, 120 N.M. 343, 901 P.2d 761 (Ct. App. 1995), and in the Uniform Jury Instructions.  The Uniform Jury Instructions instruct the jury to weigh four factors in determining whether defendant's act was justifiable under the circumstances.  <u>See</u> UJI 13-1631A NMRA.  These factors are: (i) the nature and seriousness of the harm to the plaintiff; (ii) the fairness or unfairness of the means used by the defendant; (iii) the defendant's motive or motives; and (iv) the value to defendant or to society in general of the interests that the defendant's conduct advances.  <u>See</u> UJI 13-1631A NMRA.  If the court finds that there is sufficient evidence to support all four elements in UJI 13-1631, it must then give the jury the balancing factors in UJI 13-1631A, if the Court determines that a reasonable jury could balance the factors and find for the plaintiff.

"The trial court must initially balance these factors and, if it finds that a jury could reasonably find in the plaintiff's favor, the trial court must submit the claim to the jury for its own balancing of the factors." Portales Nat. Bank v. Ribble, 134 N.M. at 240, 75 P.3d at 840.

In Martinez v. Northern Rio Arriba Electric Co-op, Inc., 132 N.M. 510, 51 P.3d 1164 (Ct. App. 2002), the Court of Appeals of New Mexico performed the balancing test and held that the plaintiff did not put forward an actionable prima-facie tort claim. See 132 N.M. at 517, 51 P.3d at 1171. The Court of Appeals found that the defendant's conduct had some justification, because: (i) the conduct related to furthering a legitimate business interest; (ii) the means the defendant used were not outside the ambit of legitimate employer behavior; (iii) the evidence did not support the view that the defendant acted maliciously with the intent to cause the injury and without sufficient justification; and (iv) the emotional difficulties the plaintiff experienced because of the defendant's actions did not, on balance, support a claim for prima-facie tort. See Martinez v. N. Rio Arriba Elec. Co-op, Inc., 132 N.M. at 516-17, 51 P.3d at 1170-71. The Court of Appeals stated: "We are not persuaded that any of these allegations, or all of them taken together, rise to the level of both behavior and injury that is envisioned by the theory of prima facie tort." Martinez v. N. Rio Arriba Elec. Co-op., Inc., 132 N.M. at 517, 51 P.3d at 1171.

## ANALYSIS

The Court will grant the Motion. The Court finds that Back failed to state a claim for wrongful termination, because ConocoPhillips did not terminate him in violation of a New Mexico public policy or in retaliation for furthering a public policy. The Court finds that Back has not stated a claim for breach of an implied contract, because he cannot identify any statements or conduct that created a reasonable expectation of continued employment. Because the breach of the implied covenant of good faith and fair dealing relies on there being an implied contract, the Court concludes

-26-

that Back has failed to state a claim on this basis as well.  Because Back failed to allege an intent

to injure, he has not stated a claim for a prima-facie tort.  Finally, the Court will not permit Back to

amend his Complaint except with respect to Counts II and III.

## I.     THE COMPLAINT FAILS TO STATE A CLAIM FOR WRONGFUL TERMINATION.

ConocoPhillips argues that Back attempts to assert a wrongful termination "couched as a

retaliatory discharge in violation of public policy."  Motion at 4.  It asserts that New Mexico has not

recognized a public policy that an employee should not be discharged for a co-worker's failure and

that there "is no assertion that Plaintiff acted in furtherance of any recognized public policy."

Motion at 5.  Back argues that public policy "does not support employer's [sic] terminating

employees for allegedly failing to follow a procedure for which the employer admittedly never

trained" and that public policy "does not favor large corporations terminating innocent employees

for mistakes cause by the employer."  Response at 12.  At the hearing, Back further asked for leave

to amend to assert a public policy based on the leak adversely affecting the environment.  <u>See</u> Tr.

at 8:5-8 (Danoff).  He argued that he can show that he was not involved in the negligence at issue

and that, in fact, he put ConocoPhillips on notice of the risk of a leak.  <u>See</u> Tr. at 11:17-12:1

(Danoff).  He admitted, however, that he was not alleging that he was fired because he put

ConocoPhillips on notice of these problems and that an amended complaint would not contain an

allegation that ConocoPhillips fired him because he reported the leak.  <u>See</u> Tr. at 12:2-8 (Court,

Danoff).

### A.     BACK HAS NOT STATED A CLAIM BASED ON A POLICY AGAINST EMPLOYERS TERMINATING EMPLOYEES FOR FAILING TO FOLLOW A PROCEDURE ON WHICH HE OR SHE WAS NOT TRAINED OR FOR MISTAKES ATTRIBUTABLE TO OTHERS.

In his Complaint, Back asserts:

65.     Defendant's wrongful discharge of the Plaintiff was in violation of an implicit public policy that an employee should not be discharged for allegedly failing to follow a procedure for which the employer never trained that employee.

66.     Defendant's wrongful discharge of the Plaintiff was in violation of an implicit public policy that an employee should not be discharged for the alleged failure of a co-worker to carry out the responsibilities of that co-worker's job.

Complaint ¶¶ 65-66, at 8.  A retaliatory discharge must be based on the "clear mandate of public policy."  Chavez v. Manville Prods. Corp., 108 N.M. at 647, 777 P.2d at 375.  A retaliatory discharge claim is available only to at-will employees, because such a provision is unnecessary when a contract protects the employee.  See Silva v. Am. Fed'n of State, Cnty., and Mun. Emps., 131 N.M. 364, 366, 37 P.3d 81, 83 (2001)("Because 'its genesis and sole application has been in regard to employment at-will,' it is 'unnecessary and inapplicable' when the employee is protected from wrongful discharge by an employment contract.").  Back does not identify from where he derives the public policy he argues that ConocoPhillips violated.  Instead, he asserts that this case fits within the fourth expression of public policy established in Shovelin v. Central New Mexico Electric Co-op., Inc., which recognized that there may be some instances where the judiciary should imply a right and a remedy.  See Response at 11-12.  Back admits, however, that the judiciary determines that a public policy exists based on "other relevant statutes or an implicit public policies."  Response at 11.  Back fails to explain from what law or cases his alleged public policy violation stems, what would justify such a public policy, or what makes that policy a "clear mandate."  Chavez v. Manville Prods. Corp., 108 N.M. at 647, 777 P.2d at 375.  The Court does not believe that any such policy exists, and Back has provided no legal authority which would contradict this conclusion.

New Mexico courts did not intend for the retaliatory discharge cause of action to abrogate

the at-will employment rule, and at-will employment remains the rule.  See Silva v. Am. Fed'n of State, Cnty., and Mun. Emps., 131 N.M. at 366, 37 P.3d at 83 (quoting Vigil v. Arzola, 102 N.M. at 688, 699 P.2d at 619)("We do not abrogate the at will rule; we only limit its application to those situations where the employee's discharge results from the employer's violation of a clear public policy.").  The two public policies that Back has proposed would render employment at-will non-existent in most situations.  At-will employment provides that an employee "can be terminated . . . for any reason or for no reason at all."  McPeek v. Hubbard Museum, 2010 WL 4060312, at *2.  If public policy forbids employers from terminating employees for procedures on which the employee was not trained, then employment at-will would essentially require good cause for termination.  The employer would then have to demonstrate that the employee had been trained, or was aware of the policy, and that he or she had failed to follow it.  This imposition would be a significant departure from the "any or no reason" standard that the New Mexico courts have endorsed.  An exception like the one Back proposes would overtake the rule.  A public policy which prohibited employers from terminating employees for mistakes attributable to others would similarly shift from an employment at-will standard to a good-cause standard, because an employer would be required to investigate and provide a reason for a termination.  The New Mexico courts created the retaliatory-discharge action as a "narrow exception to the terminable at will rule," and the public policies that Back proposes would enlarge that narrow exception and eviscerate the general rule.  Silva v. Albuquerque Assembly & Distrib. Freeport Warehouse Corp., 106 N.M. 19, 21, 738 P.2d 513, 515 (1987).  Accordingly, the Court concludes that New Mexico does not recognize these proposed public policies and that there is no clear mandate that employers abstain from this conduct.

Furthermore, these kinds of public policies would not fit the elements of a retaliatory discharge.  It would be difficult to say that an employee "performed an act that public policy has

authorized or encouraged, or refused to perform an act that public policy would prohibit," when an employer terminates him or her for failing to follow a procedure on which he or she was not trained. McPeek v. Hubbard Museum, 2010 WL 4060312, at *3.  The public policies Back proposes would also not easily satisfy the causation requirement that the employer terminated the employer for taking a protected action.  See McPeek v. Hubbard Museum, 2010 WL 4060312, at *3.  Any violation of the public policies Back proposes would not be "retaliatory discharges," in the sense that the employer would not be firing the employee for acting in a manner that New Mexico wants to encourage.  Sanchez v. The New Mexican, 106 N.M. at 78, 738 P.2d at 1324 (determining that the court need not reach the question whether there was a public policy, because there was credible evidence to "justify the Employer's claim that Sanchez's discharge had nothing to do with his complaints about the supposed non-payments of gross receipts taxes").  Moreover, the public policies that Back proposes are unlike other which New Mexico has recognized.  See Vigil v. Arzola, 102 N.M. at 690, 699 P.2d at 621 (discussing public policy against misuse of public monies); McPeek v. Hubbard Museum, 2010 WL 4060312, at *3 (discussing public policy against an employer firing an employee for reporting another employee's illegal activities as an example of the fourth expression of public policy).  Accordingly, the Court finds that Back has failed to state a claim for retaliatory discharge based on the alleged public policies disfavoring termination for failing to follow a procedure on which the employee was not trained or for mistakes attributable to others.

> **B.   BACK CANNOT STATE A CLAIM FOR RETALIATORY DISCHARGE BASED ON HIS REPORTS OF POSSIBLE ENVIRONMENTAL CONCERNS.**

At the hearing, Back asked for leave to amend to assert a public policy based on the leak adversely affecting the environment.  See Tr. at 8:5-8 (Danoff).  He argued that he can show that

he was not involved in the negligence at issue and that, in fact, he put ConocoPhillips on notice of the risk of a leak.  See Tr. at 11:17-12:1 (Danoff).  He admitted, however, that he was not alleging that he was fired because he put ConocoPhillips on notice of these problems and that an amended complaint would not contain an allegation that ConocoPhillips fired him because he reported the leak.  See Tr. at 12:2-8 (Court, Danoff).  Back's admission that he was not fired in retaliation for any reports of possible environmental leaks establishes that he cannot satisfy the elements of a retaliatory discharge.  "[A]n employee seeking to recover for retaliatory discharge must show a causal connection between his protected actions and his discharge."  Lihosit v. I & W Inc., 121 N.M. 455, 457, 913 P.2d 262, 264 (Ct. App. 1996).  Because Back concedes that there is no causation between his report and his termination, no environmental public policy supports Back's retaliatory discharge claim.  Accordingly, the Court will grant the Motion with respect to Count I.

### C. AMENDMENT ON COUNT I IS FUTILE.

Under rule 15(a), the court should freely grant leave to amend a pleading where justice so requires.  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.  A court should deny leave to amend under rule 15(a), however, where the proposed "amendment would be futile." Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv., 175 F.3d at 859.  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.  Here, amendment would be futile, because the Court has determined that two of the public policies Back identified were not clear mandates that New Mexico would endorse and that Back cannot satisfy the causation element of a retaliatory discharge claim for reporting his environmental concerns.  Back has identified no other public policies that would support a retaliatory discharge claim.  An amendment is "futile" if the pleading "as amended, would be subject to dismissal."  In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (citing TV Commc'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d at 1028).

Accordingly, because Back has identified no public policies which would support a retaliatory discharge claim, the Court finds that amendment would be futile and will not permit Back to amend this count.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF AN IMPLIED CONTRACT OR OF AN IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

ConocoPhillips argues that the Complaint fails to allege that it "said or did anything that would create a reasonable expectation of job security, or that Defendant limited its ability to terminate the employment relationship in any way." Motion at 6. Back argues that he "relied on promises, oral representations, an employee handbook, and the conduct of the Defendant for his assertion that an implied contract existed and was breached." Response at 14. He asserts that ConocoPhillips cannot avoid liability "by refusing to provide Plaintiff with ConocoPhillips Policy and Procedure Manual." Response at 15. At the hearing, the Court asked Back on what statements he relied to establish an implied contract. See Tr. at 24:15-16 (Court). Back responded that he will have statements to add, but that he needs to see the policy to do that. See Tr. at 24:17-18 (Danoff). He asserted that he should have the benefit of being able to see the policy, before the Court dismisses the claim. See Tr. at 26:4-14 (Danoff). He emphasized that he needs to see the policy to amend his Complaint. See Tr. at 28:5-8 (Danoff).

### A.   BACK HAS FAILED TO STATE A CLAIM FOR BREACH OF AN IMPLIED CONTRACT.

In Bell Atlantic, Inc. v. Twombly, the Court held that a plaintiff must "nudge[] their claims across the line from conceivable to plausible." 550 U.S. at 570. Back alleges that:

73.   There was an implied contract between Defendant and Plaintiff.

74.   There was a promise and representation that created a reasonable expectation in the mind of Plaintiff that Defendant would follow particular defined and

established personnel procedures regarding training and treatment of Plaintiff and Defendant's employees in general.

75.     An employer-employee relationship was controlled by a policy and procedural manual.

76.     Despite multiple requests, Defendant refused to provide Plaintiff with ConocoPhillips Policy and Procedure Manual.

77.     The actions of Defendant were willful, wanton, reckless disregard of the Plaintiff and of Public Policy which should be deterred in the future.

Complaint ¶¶ 73-77, at 9.  A "'plain statement' of the claim showing a plaintiff is entitled to relief is necessary to provide defendants 'fair notice of what the claim is and the grounds upon which it rests.'" Gray v. Univ. of Colo. Hosp. Auth., 672 F.3d 909, 921 n.9 (10th Cir. 2012).  Although a plaintiff is not required to attach a copy of the documents constituting the alleged contract, see Supermedia LLC v. Kantaras & Andreopoulos, No. 9:11-cv-02328-T-17EAJ, 2012 WL 895444, at *4 (M.D. Fla. Mar. 15, 2012)("Defendants did not present this Court with any caselaw or other authority supporting the proposition that when a complaint alleges claims for breach of express contract it should be dismissed or found insufficient if the plaintiff fails to attach the purported written contracts to the complaint."); Jones v. Select Portfolio Servicing, Inc., No. 08-972, 2008 WL 1820935, at *4 (E.D.Pa. Apr. 22, 2008)(citing Mayes v. Local 106, Int'l Union Operating Eng'rs, 739 F.Supp. 744, 748 (N.D.N.Y.  1990)); Lone Star Indus., Inc. v. Nelstad Material Corp., 811 F.Supp. 147, 148 (S.D.N.Y. 1993)("[M]oreover, notice pleading under the Fed. R. Civ. P. 8 permits allegations concerning governing documents even if not attached to the complaint."), the plaintiff must still give the defendant notice of the grounds upon which the claim rests.

Furthermore, although Back alleges the existence of a contract, he fails to identify what part of the contract ConocoPhillips breached.  He has failed to put ConocoPhillips on notice as to what ConocoPhillips promised that it failed to deliver.  Back does nothing to move his allegations beyond

conclusory assertions.  In <u>Bissessur v. Indiana University Board of Trustees</u>, 581 F.3d 599 (7th Cir. 2009), the United States Court of Appeals for the Seventh Circuit held that similar allegations were insufficient to state a claim for breach of an implied contract.  There, the plaintiff asserted that: (i) "[a]n implied contract existed between Bissessur and IU"; (ii) "IU breached the implied contract that existed between Bissessur and IU"; and (iii) "IU's actions were arbitrary, capricious, and undertaken in bad faith."  <u>Bissessur v. Ind. Univ. Bd. of Trs.</u>, 581 F.3d at 602.  Although Back's allegations are slightly more detailed, they suffer from the same deficiency that the Seventh Circuit identified.  The Seventh Circuit held that the complaint "[fell] drastically short of providing the necessary factual details to meet the <u>Twombly</u> standard," because it contained "no mention of the entitlements Bissessur had as a result of his relationship with the University, or any promises that the University or its officials may have made to him that might have formed the basis of a contract, implied or otherwise." <u>Bissessur v. Ind. Bd. of Trs.</u>, 581 F.3d at 603.  In <u>Armijo v. New Mexico Department of Transportation</u>, the Court found that allegations similar to those Back makes were insufficient to state a claim for breach of contract.  The Court noted that, in support of the breach-of-contract claim, the plaintiff asserted that "the Department would follow state employment policies and procedure, and that the Department terminated him in breach of those policies without just cause."  <u>Armijo v. N.M. Dep't of Transp.</u>, 2009 WL 1329192, at *7.  The Court noted that the plaintiff did not "indicate what contractual provisions or employment policies the Department breached," and did not say "to what his employment contract entitles him or of what the Department deprived him."  <u>Armijo v. N.M. Dep't of Transp.</u>, 2009 WL 1329192, at *7.  The Court found that there was "not enough to determine whether, if taken as true, the Complaint's allegations would support claims for breach of contract."  <u>Armijo v. N.M. Dep't of Transp.</u>, 2009 WL 1329192, at *8.

The Court finds that Back, like the plaintiffs in <u>Bissessur v. Indiana Board of Trustees</u> and

<u>Armijo v. New Mexico Department of Transportation</u>, has failed to alleged a breach of contract claim.  First, Back fails to allege who or what represented to Back that he could expect certain policies and procedures to govern the length of his employment.  Back alleges no more than that "[t]here was a promise and representation that created a reasonable expectation in the mind of Plaintiff."  Complaint ¶ 73, at 9.  He does not state whether he is relying on an employee manual or on an individual's representations.  Second, Back's Complaint fails to identify the procedures he alleges he was promised and of what he had a reasonable expectation.  He does not state whether ConocoPhillips promised to use progressive discipline, or to terminate employees only for good cause.  Like the plaintiff in <u>Armijo v. New Mexico Department of Transportation</u>, Back "sets forth conclusions without adequate factual support." 2009 WL 1329192, at *7.  Back's allegations do not set forth more than "an unadorned, the defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Accordingly, the Court finds that Back has failed to set forth a claim for breach of an implied contract.

Back asserts that the Court should not dismiss this count, because to adequately assert a breach of an implied contract, he needs access to ConocoPhillips' policy manual and that ConocoPhillips refuses to produce that document.  At this stage of the litigation, however, Back is not entitled to force ConocoPhillips to produce the manual.  "<u>Twombly</u>'s pleading standard is designed precisely to 'avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim.'" <u>Slocum v. Corporate Exp. U.S. Inc.</u>, 446 F.App'x 957, 960 (10th Cir. 2011)(unpublished)(citing <u>Pace v. Swerdlow</u>, 519 F.3d 1067, 1076 (10th Cir. 2008)).  The Supreme Court held that "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 685.  It further declined to "relax

the pleading requirements on the ground that the Court of Appeals promises petitioners minimally intrusive discovery," and held that, "[b]ecause respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise." Ashcroft v. Iqbal, 556 U.S. at 686. The Seventh Circuit, when dealing with this issue, held that "Bissessur's argument that the exact details of the contract will become clear during discovery runs counter to the holding of Twombly, which dictates that the complaint itself must contain sufficient factual detail to describe the parameters of the contract before discovery may commence." Bissessur v. Ind. Univ. Bd. of Trs., 581 F.3d at 603. Back has cited no authority for his assertion that the Court should compel ConocoPhillips to produce any policy manual or which would contradict the Supreme Court's holdings in Bell Atlantic Corp. v. Twombly. Accordingly, because the Court concludes that the Complaint fails to state a claim, the Court will grant the Motion with respect to Count II.

### B. BECAUSE BACK'S CLAIM FOR BREACH OF AN IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IS DERIVATIVE OF HIS BREACH OF CONTRACT CLAIM, BACK HAS FAILED TO STATE A CLAIM FOR RELIEF IN COUNT III.

ConocoPhillips asserts that, because Back is employed at-will, he cannot recover under a claim of breach of the covenant of good and fair dealing. See Motion at 7. It argues that the Supreme Court of New Mexico has declined to recognize a cause of action in an at-will employment relationship for breach of an implied covenant of good faith and fair dealing. See Motion at 7 (citing Melnick v. State Farm Mut. Auto. Ins. Co., 106 N.M. at 730, 749 P.2d at 1109). Back contends that his claims fall within the two exceptions to the at-will employment rule and that ConocoPhillips breached the implied covenant of good faith and fair dealing when it "failed to follow the established policies and procedures of the implied employment contract." Response at 16.

A claim for breach of the covenant of good faith and fair dealing sounds in contract. See

Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857.  The Supreme Court of

New Mexico has noted that it does "not recognize a cause of action for breach of an implied

covenant of good faith and fair dealing in an at-will employment relationship."  Melnick v. State

Farm Mut. Auto. Ins. Co., 106 N.M. 726, 730, 749 P.2d 1105, 1109 (1988).  This limitation is

because "there is no contract of employment upon which the law can impose the stated duty to

exercise good faith and fair dealing."  Sanchez v. The New Mexican, 106 N.M. at 78, 738 P.2d at

1324 (emphasis in original).  The Court has previously held that a "claim for breach of the covenant

of good faith and fair dealing is derivative of the breach-of-contract claim."  Armijo v. N.M. Dep't

of Transp., 2009 WL 1329192, at *7.  Because the Court has found that Back has not set forth a

claim for breach of an implied contract and because the general rule in New Mexico is employment

at-will, the Court finds that Back similarly fails to set forth a claim for breach of an implied

covenant of good faith and fair dealing.  See Armijo v. N.M. Dep't of Transp., 2009 WL 1329192,

at *7 ("Given that the breach-of-contract claim is inadequate, the Court does not believe the

dependent claim for breach of the covenant of good faith and fair dealing can stand.").  Accordingly,

the Court will grant the Motion with respect to Count III.

### C.       AMENDMENT OF COUNTS II AND III IS NOT FUTILE.

At the hearing, Back asserted that, if given leave to amend, he would allege that he relied on

his experiences with other employees and the way ConocoPhillips treated them to form his

reasonable expectation of continued employment.  See Tr. at 33:19-24 (Danoff).  When the Court

asked whether Back would be able to make specific allegations with respect to the discipline other

employees received, Back replied that he will be able to make specific allegations based on his

experience as a former manager.  See Tr. at 33:25-34:8 (Court, Danoff).  He further asserted that he

would allege that he relied on the course of conduct he had observed during twenty years of work.

See Tr. at 34:18-22 (Danoff).

"A promise, or offer, that supports an implied contract may be found in written representations such as a an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct." Salazar v. City of Albuquerque, 776 F.Supp.2d at 1250 (emphasis added)(citing Newberry v. Allied Stores, Inc., 108 N.M. at 426, 773 P.2d at 1233). "The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon." Hartbarger v. Frank Paxton Co., 115 N.M. at 672, 857 P.2d at 783. Back's assertions at the hearing that he could allege an implied contract based on ConocoPhillips' conduct towards other employees may state a claim upon which relief can be granted. Because Back alleges that he can make specific representations about other employees, the Court cannot say that it would be futile to permit amendment, and, following rule 15's liberal amendment standards, the Court should allow Back to amend his complaint. The Court notes, however, that Back should make specific allegations and that his allegations should address employees in similar circumstances. In Trujillo v. N. Arriba Elec. Co-Op., Inc., 131 N.M. 607, 41 P.3d 333 (2001), the Supreme Court of New Mexico reversed a jury's finding that an implied contract existed, because the other employees on whom the plaintiff relied "were not in the 'same or similar circumstances' as Mr. Trujillo." 131 N.M. at 616, 41 P.3d at 342. To overcome the plausibility requirements of Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal, any amendment must make clear what Back's expectations were, on what conduct he based those expectations, and how ConocoPhillips failed to meet those expectations. Because Back indicated that he could meet these requirements, the Court cannot say that any amendment would be futile or subject to dismissal. See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80. Accordingly, in the interests of justice, and because Back has indicated that he can make specific allegations regarding an implied

contract based on ConocoPhillips' treatment of other employees, the Court will allow Back to amend his pleadings with respect to Count II.  See Cheromiah v. United States, 55 F.Supp.2d 1295, 1298 (D.N.M. 1999)(Vazquez, J.)("When granting Rule 12(c) motions, courts may give leave to amend and 'may dismiss causes of action rather than grant judgment.'").  Because Count III is derivative of Count II, the Court will also permit Back to reassert and amend his allegations with respect to Count III.

## III.     THE FACTS ALLEGED IN THE COMPLAINT DO NOT SUPPORT A CLAIM FOR PRIMA-FACIE TORT.

With respect to Count IV, ConocoPhillips argues that the Complaint "does not assert any facts to prove that Defendant intended to injure Plaintiff."  Motion at 7-8.  It contends that "[p]roof on this element must be of an actual intention to injure, not merely intent to do the act which could result in the claimed injury."  Motion at 8.  Back acknowledges the "heavy burden" he faces with respect to his prima-facie-tort claim, but asserts that discovery "will reveal that Defendant intended to injure Plaintiff by wrongfully terminating Plaintiff in breach of an implied employment contract."  Response at 16.

### A.     BACK FAILS TO STATE A CLAIM FOR PRIMA FACIE TORT, BECAUSE HE HAS NOT ADEQUATELY ALLEGED AN INTENT TO INJURE.

Back alleges

90.     In the alternative, the actions of the Defendant may have been lawful; however, Defendant discharged Plaintiff with malicious intent, which caused damages to the Plaintiff herein.

91.     That the Defendant's discharge of Plaintiff was not justifiable under all the circumstances.

92.     The actions of Defendant were willful, wanton, reckless disregard of the Plaintiff and of public policy which should be deterred in the future.

Complaint ¶¶ 90-92, at 11.  These allegations are insufficient to state a claim upon which relief can

-39-

be granted.  The underlying theory of the prima-facie tort is that a party who intends to cause injury to another should be liable for that injury, if the conduct is generally culpable and not justifiable under the circumstances.  See Schmitz v. Smentowski, 109 N.M. at 394, 785 P.2d at 734.  In Schmitz v. Smentowski, the Supreme Court of New Mexico emphasized the importance of limiting the cause of action for prima-facie tort, because the prima facie tort was not intended to provide a remedy for every intentionally caused harm.  See Schmitz v. Smentowski, 109 N.M. at 394, 785 P.2d at 734.  To establish an intent to injure, "[n]ot only must the act be intentional, but the defendant must know that the act was wrong when he or she did it," and the plaintiff must demonstrate "an actual intention to injure, not merely an intent to do the act which may result in the claimed injury."  Portales Nat'l Bank v. Ribble, 134 N.M. at 241, 75 P.3d at 841.  Plaintiff's bear a heavy burden to establish intent to injure.  See Lexington Ins. Co. v. Rummel, 123 N.M. at 777, 945 P.2d 995.

       In Kitchell v. Public Service Co. of New Mexico, 126 N.M. 525, 972 P.2d 344 (1998), the Supreme Court of New Mexico found that similar allegations were insufficient to satisfy the intent-to-injure requirement and could not set forth a prima-facie tort claim.  There, the plaintiff alleged that the defendant had terminated his employment to cut off his health insurance.  See Kitchell v. Pub. Serv. Co. of N.M., 126 N.M. at 529, 972 P.2d at 348 ("Kitchell describes PNM's act as 'a lawful act which Defendant did with intent to cut off Plaintiff's health insurance, which they knew would injur[e] Plaintiff and his family, as has precisely happened.").  The Supreme Court of New Mexico held that the facts "adduced by Kitchell tend to prove only that PNM intentionally terminated his employment and ended his right to company-paid health insurance."  Kitchell v. Pub. Serv. Co. of N.M., 126 N.M. at 530, 972 P.2d at 349.  It noted that intent to injure and malice are often used interchangeably.  See Kitchell v. Pub. Serv. Co. of N.M., 126 N.M. at 529, 972 P.2d at

348.  Ultimately, the Supreme Court of New Mexico found that there was "no evidence that PNM intended to harm or injure Kitchell."  Kitchell v. Pub. Serv. Co. of N.M., 126 N.M. at 529, 972 P.2d at 348.  In Lexington Insurance Co. v. Rummel, the Supreme Court of New Mexico found Missouri case law to be instructive.  It relied on Kiphart v. Community Federal Savings & Loan Association, 729 S.W.2d 510 (Mo. Ct. App. 1987), in which a bank was accused of prima facie tort for interrogating a teller to determine whether the teller was responsible for a cash shortfall and the Missouri court reversed a judgment in favor of the teller holding that "the bank had acted to protect its economic interest."  Lexington Ins. Co. v. Rummel, 123 N.M. at 777, 945 P.2d at 995 (citing Kiphart v. Comty. Fed. Sav. & Loan Ass'n, 729 S.W.2d at 517).

Back's allegation that ConocoPhillips acted with "malicious intent" is a legal conclusion and, without facts to support that allegation, it is insufficient to state a claim for prima facie tort. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  Like the plaintiff in Kitchell v. Public Service Co. of New Mexico, Back has failed to sufficiently allege an intent to injure other than the threadbare statement that his termination was "malicious."  The defendant in Kitchell v. Public Service Co. of New Mexico, like ConocoPhillips, terminated the plaintiff-employee, and the Supreme Court of New Mexico held that such conduct, without more, is insufficient to establish an intent to injure.  Moreover, Back's Response reveals a misunderstanding of the intent-to-injure requirement.  In his Response, Back argues that ConocoPhillips had an intent to injure, because "Defendant knew Plaintiff would be injured if he was terminated and in fact Plaintiff has been injured as a result of his wrongful termination."  Response at 17.  New Mexico law, however, establishes that intent to injure "is quite distinct from an intent to commit an act that naturally and foreseeably results in injury," Saylor v. Valles, 133 N.M. 432, 439, 63 P.3d 1152, 1159 (Ct. App.

2002), and that "[i]ntent to injure is distinct from intent to commit the act which results in injury," Lexington Ins. Co. v. Rummel, 123 N.M. at 777, 945 P.2d at 995.  Accordingly, Back has failed to allege an intent to injure.  See Ashcroft v. Iqbal, 556 U.S. at 683 ("Yet respondent's complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind.").

Furthermore, Back's argument that discovery will reveal ConocoPhillips' intent to injure him does not defeat the Motion.  See Response at 16-17.  As the Court noted with respect to the breach of implied contract claim, "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management."  Ashcroft v. Iqbal, 556 U.S. at 685.  The Supreme Court has declined to "relax the pleading requirements on the ground that the Court of Appeals promises petitioners minimally intrusive discovery" and has held that, "[b]ecause respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."  Ashcroft v. Iqbal, 556 U.S. at 686.  It is no answer to argue that discovery would reveal ConocoPhillips' intent, because, when a plaintiff fails to state a claim upon which relief can be granted, that plaintiff is not entitled to discovery on that claim to find information to support it.  The Supreme Court's decisions in Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal preclude allegations which fail to state a claim from moving forward to discovery, where the plaintiff can use information obtained from the defendant to buttress his or her claims.  Accordingly, the Court will grant the Motion with respect to Count IV.

**B.    AMENDMENT OF COUNT IV IS FUTILE.**

At the hearing, Back focused on the Complaint's allegations that he was damaged and that the damages would be known establish the intent to injure.  See Tr. at 38:25-39:10 (Danoff).  He also emphasized that the intent is reflected in his termination after twenty years as a faithful

employee.  See Tr. at 39:15-18 (Danoff).  Although Back suggested amendments he could make with respect to the other Counts in the Complaint, Back offered no additional allegations that he could make to the Court which would state a claim for relief for a prima facie tort.  In his Response, Back suggested that discovery would reveal ConocoPhillips' intent.  See Response at 16-17. Because Back has offered no additions that he could make to his Complaint with respect to Count IV and because Back is not entitled to the discovery which he believes would reveal ConocoPhillips' intent, the Court finds that permitting amendment would be futile.  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (holding that an amendment is "futile" if the pleading "as amended, would be subject to dismissal").  Accordingly, the Court will not allow Back to amend his pleadings with respect to Count IV on the prima facie tort.

        **IT IS ORDERED** that the Defendant's Motion for Judgment on the Pleadings, filed May 9, 2012 (Doc. 6), is granted.  The Court will allow amendment with respect to Counts II and III of the Complaint for Wrongful Termination and/or Retaliatory Discharge, Breach of Implied Contract, Breach of Covenant of Good Faith and Fair Dealing, Prima Facie Tort, and Damages, ¶¶ 8-9, at 2, filed March 13, 2012 (Doc. 1).

                                                    _____
                                                    UNITED STATES DISTRICT JUDGE

Counsel:

Michael L. Danoff
Michael Danoff & Associates, P.C.
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

-43-

Robert Shawn Oller
Littler Mendelson
Phoenix, Arizona

--and--

Charlotte A. Lamont
Littler Mendelson, P.C.
Albuquerque, New Mexico

*Attorneys for the Defendant*